# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JUSTIN YARDLEY, )
 )
    Plaintiff, )
 )
v. )  **Case No. 13-1100-CM**
 )
CAROLYN W. COLVIN, )
COMMISSIONER OF SOCIAL SECURITY, )
 )
    Defendant. )
_____ )

## MEMORANDUM AND ORDER

On December 1, 2009, plaintiff Justin Yardley protectively filed this action pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 et seq., and Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Under Title II, plaintiff requests disability insurance benefits. Under Title XVI, plaintiff requests supplemental security income benefits. Plaintiff's claims were denied initially and on reconsideration. Following a video hearing, an Administrative Law Judge ("ALJ") found that plaintiff was not disabled in a decision dated September 8, 2011. On December 4, 2012, the Appeals Council of the Social Security Administration denied plaintiff's request for review. Thus, the ALJ's decision stands as the final decision of the Commissioner.

## I. Legal Standard

Under 42 U.S.C. § 405(g) this court applies a two-pronged review to the ALJ's decision. This review determines (1) whether the ALJ's decision is supported by substantial evidence in the record as a whole and (2) whether the ALJ applied the correct legal standards. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). "Substantial evidence" means "more than a mere scintilla" and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter v. Astrue*, 321 F. App'x 789, 792 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067,

1070 (10th Cir. 2007)).  In its analysis, the court may not reweigh the evidence or substitute its judgment for that of the ALJ.  *See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).  On the other hand, the court must examine the entire record—including any evidence that may detract from the decision of the ALJ.  *Jaramillo v. Massanari*, 21 F. App'x 792, 794 (10th Cir. 2001) (citing *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994)).

Plaintiff bears the burden of proving disability.  *Hunter*, 321 F. App'x at 792.  A disability requires an impairment—physical or mental—that renders one unable to engage in any substantial gainful activity.  *Id.* (quoting *Barnhart v. Walton*, 535 U.S. 212, 217 (2002)).  Impairment, as defined under 42 U.S.C. § 423(d)(1)(A), is a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

The ALJ uses a five-step sequential process to evaluate disability claims.  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (citation omitted).  But the ALJ may stop once he makes a disability determination; he need not proceed to subsequent steps if he concludes that a claimant is or is not disabled at an intermediate step.  *Id.*  Step one requires the plaintiff to demonstrate that he is not engaged in substantial gainful employment activity.  *Id.*  If the plaintiff meets this burden, then the ALJ proceeds to the second step.  Step two requires the plaintiff to demonstrate that he has a "medically severe impairment or combination of impairments" that severely limits his ability to do work.  *Id.* (internal quotation omitted).  At this point, if the plaintiff cannot show that his impairments would have more than a minimal effect on his ability to do work, then the ALJ may determine plaintiff is not disabled.  *Id.* at 751.  If the plaintiff meets the de minimis showing, then the ALJ proceeds to step three. *Id.*

At step three, the ALJ compares the plaintiff's impairment to the "listed impairments"—impairments that the Secretary of Health and Human Services recognizes as severe enough to preclude substantial gainful activity. *Id*. If the plaintiff's impairment matches one on the list, then a finding of disability is made. *Id*. If not, the ALJ advances to step four. *Id*. Before step four, however, the ALJ must assess the plaintiff's residual functional capacity ("RFC"). *Baker v. Barnhart*, 84 F. App'x 10, 13 (10th Cir. 2003) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)). The ALJ uses this RFC for steps four and five. At step four, the plaintiff must demonstrate that his impairment prevents him from performing his past work. *Williams*, 844 F.2d at 751. If this showing is made, the ALJ moves to the fifth and final step. *Id*. Here, the burden shifts to the ALJ. *Id*. The ALJ must—considering the plaintiff's RFC and vocational factors of age, education and work experience—show that the plaintiff can perform some work that exists in large numbers in the national economy. *Id*.

## II. Analysis

### A. The Administrative Decision

The ALJ conducted a video hearing where he and plaintiff's counsel asked questions of plaintiff and a Vocational Expert ("VE"). The ALJ then issued his decision, determining that plaintiff met the insured status requirements of the Social Security Act through September 30, 2014. The ALJ also found that plaintiff had not engaged in substantial gainful activity since May 2, 2009, the alleged onset date. Based on evidence in the record, the ALJ concluded that plaintiff suffers from the following severe impairment: degenerative disc disease of the lumbar spine – status post surgery. (R. at 19.) The ALJ then found that plaintiff did not have an impairment or combination of impairments listed in or medically equal to one of the listed impairments. (*Id*. at 19–20.)

The ALJ determined that plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that plaintiff "can only occasionally climb ramps/stairs,

balance, stop, kneel, crouch, crawl and should never climb ladders/ropes/scaffolds." (R. at 20.) The ALJ also limited plaintiff to "work in occupations without concentrated exposure to temperature extremes, vibration, work hazards and where he is only required to perform occasional overhead reaching." (*Id*.) Further, the ALJ found plaintiff capable of "simple, unskilled work where he can alternate between sitting and standing at will." (*Id*.)

The ALJ found that plaintiff was unable to perform any past relevant work. (*Id*. at 24.) Nevertheless, the ALJ determined that plaintiff would be able to perform other work existing in significant numbers in the national economy. (*Id*.) Finally, the ALJ found that plaintiff had not been under a disability from May 2, 2009, to the date of the decision. (*Id*. at 25.)

**B. Plaintiff's Claims**

Plaintiff argues that the ALJ erred in four ways. **<u>First</u>**, plaintiff argues that the ALJ erred by making a determination of plaintiff's credibility that was erroneous and not supported by substantial evidence and by improperly requiring objective substantiation of plaintiff's pain.

The court will not disturb an ALJ's credibility determinations when they are supported by substantial evidence; they are "peculiarly the province of the finder of fact." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (quotation omitted). When analyzing evidence of pain, the ALJ must first determine if the objective medical evidence demonstrates that a pain-producing impairment exists. *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). Next, the ALJ must look at the nexus between the impairment and the plaintiff's allegations of pain. *Id*. If the nexus is sufficient, the ALJ must consider all of the evidence—both subjective and objective—to determine whether the plaintiff's pain is in fact disabling. *Id*.

The ALJ must closely and affirmatively link her findings to the substantial evidence, identifying the specific evidence upon which she relies. *Sanders v. Astrue*, 266 F. App'x 767, 770

(10th Cir. 2008) (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).  The ALJ may consider the following when making his credibility determination:

> (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment for relief of the symptoms; (6) measures other than treatment used to relieve the symptoms (e.g. rest); and (7) any other factors.

Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *3 (July 2, 1996).  But the ALJ is not required to formally address every factor.  *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (holding that a credibility finding "does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility") (quotation marks and citation omitted).

Here, the ALJ found that plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms.  However, the ALJ found plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms to be "not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (R. at 21.)

The ALJ first discussed that plaintiff had back surgery in 2001 and then returned to his construction job.  (*Id*.)  Plaintiff then exacerbated his back pain after an "altercation" at work in 2009.  (*Id*.)  The ALJ explained that plaintiff had not worked since that time and was terminated after trying to return to work.  (*Id*.)  Plaintiff was then denied unemployment.  (*Id*. at 21, 42.)

Discussing the objective medical evidence, the ALJ noted that although plaintiff's treating physician, Dr. Rose, did originally hold plaintiff out of work after his injury, Dr. Rose released plaintiff to work without restrictions in April 2009.  (*Id*. at 22.)  And he stated that an x-ray of plaintiff's cervical spine in May 2010 was normal.  (*Id*.)  Further, an MRI of the lumbar spine in March

2010 "showed some post surgical changes at L5 with hardware from a previous fusion" and "[t]here was some bilateral neural foraminal narrowing at L4-5 with bilateral foraminal stenosis at L5-S1 without central spinal stenosis." (*Id*. at 22.) The ALJ noted that the MRI was otherwise unremarkable. (*Id*.) He also indicated that other March 2010 imagery showed mild degenerative disc disease at the same location, and that earlier imagery in April 2009 had shown some degenerative changes at L4-5, but otherwise showed a normal lumbar view. (*Id*.) Finally, imagery of plaintiff's knees in January 2009 was essentially normal. (*Id*.)

The ALJ also stated that plaintiff was examined by Dr. Saad M. Al Shathir, M.D., in March 2010, who noted that plaintiff showed pain in straight-leg raising only at the eighty-degree level, with some mild spasms. (*Id*. at 23.) The ALJ discussed Dr. Al Shathir's opinion that plaintiff could write, sit up and transfer, reach, bend, manipulate objects without incident, and had flexion within normal limits. (*Id*.) And the ALJ noted that plaintiff did not report the level of symptoms to Dr. Al Shathir that he testified about in the hearing. (*Id*.)

The ALJ gave some weight to the opinion of Dr. Michael Peril, M.D., whose April 2010 opinion stated that plaintiff could perform a range of light work. (*Id*.) Dr. Peril's decision was confirmed as written by Dr. Gerald Siemsen, M.D., in August 2010. (*Id*.) The ALJ noted that Dr. Peril cited a lack of medical evidence of plaintiff's symptoms and also the fact that Dr. Rose released plaintiff to go back to work, but that plaintiff never picked up the release and instead wanted to discuss unemployment. (*Id*.) The ALJ noted his agreement with Dr. Peril that there was a lack of objective evidence to support plaintiff's complaints. (*Id*.) However, the ALJ relied on plaintiff's disposition at the hearing and his subjective complaints in finding that plaintiff has some impairment. (*Id*.) Thus, the ALJ gave some credit to plaintiff's subjective complaints in finding that additional limitations were warranted beyond those recommended by Drs. Peril and Siemsen and limited plaintiff to a range of

sedentary work.  (*Id.*)  He also found that Dr. Al Shathir's opinion regarding some limits in plaintiff's straight-leg raising and flexion supported a finding that plaintiff has some impairment.  (*Id.*)

Plaintiff argues that the ALJ found his statements to be not credible solely based on the lack of objective medical evidence supporting his complaints.  The court does not agree.  Although the ALJ did find that there was insufficient objective medical evidence in the record to support the level of limitation alleged by plaintiff, the ALJ also discussed plaintiff's daily activities, his treatment for pain relief, and other factors.

For example, the ALJ considered plaintiff's statements that his problems were so severe that he: (1) needed help dressing, bathing, and could not grip things with his right arm; (2) spent about five hours on a typical day lying down; and (3) needed help getting out of bed some days and help preparing his own meals.  (*Id.* at 21–22.)  He then contrasted this with plaintiff's statements that he (1) often watches his roommate's twelve-year-old son and gives the children rides; (2) does light household chores when he is able; (3) shops; and (4) plays guitar, goes camping, and goes fishing.  (*Id.* at 22.)  The ALJ properly found these activities to be inconsistent with plaintiff's complaints.

Although the ALJ did ultimately conclude that the objective medical evidence did not support the level of pain alleged by plaintiff, this was not his only reason for his credibility determination.  The ALJ discussed multiple factors as required by law.  He may not have discussed every factor, but strict adherence to the factors is not required.  The court will not substitute its opinion for that of the fact-finder in this situation.  The ALJ's credibility determination is supported by substantial evidence.[1]

---

[1]  Although the court does not rely on it for its decision, the court notes the inconsistency of plaintiff's attempt to get unemployment after his 2009 injury (which requires alleging that one is able to work) with his assertion that he was disabled and unable to work around the same time.  *See Marshall v. Astrue*, 2011 WL 3440081, at *11 (D. Kan. Aug. 8, 2011) (noting that the plaintiff's contradictory assertions of being able to work in order to receive unemployment benefits, but disabled and unable to work to receive disability benefits contributed to finding that the plaintiff's disability allegations were not credible).

**Second**, plaintiff argues that the ALJ improperly evaluated his course of medical treatment. Specifically, plaintiff contends that the ALJ discredited him for not undergoing epidural treatments when he did in fact do so. In support, plaintiff quotes a portion of the ALJ's decision in which he states:

> Claimant has successfully worked post his fusion surgery in 2001 and Dr. Rose's plan for epidural injections to alleviate the claimant's pain, which is real, were [sic] never contradicted in the medical record as being ineffective. Regardless, the claimant sought no other plan to alleviate his pain. Therefore, the undersigned finds that the claimant is capable of a sedentary exertional level and assigns postural and environmental limits that are supported by the medical evidence.

(*Id*. at 23.) Plaintiff also points to the ALJ's observation that "Dr. Rose's records show that the claimant did not want further epidural injections for fear they would interfere with the hardware or hit his spinal cord. (Exhibit B9F)." (*Id*. at 22.)

Although the block-quoted passage above is not extremely clear, the court finds that the ALJ did acknowledge plaintiff's completion of the three epidural injections: the ALJ noted only three paragraphs earlier in his opinion that plaintiff "has had epidural injections with mixed results." (*Id*.) In the block-quoted passage, it appears that the ALJ was noting that the record lacked evidence that Dr. Rose's epidural injection plan was ineffective. And the ALJ followed up by noting that, regardless of whether the epidural injections were ineffective, plaintiff sought no other plan to alleviate his pain. (*Id*. at 23.) Thus, although the ALJ could have expressed this notion more clearly, the court does not agree that the ALJ found plaintiff did not undergo the epidural injections and discredited plaintiff for this reason.

Plaintiff includes a similar argument that the ALJ discredited his testimony by finding that he "successfully worked" after his fusion surgery in 2001. (Id. at 23.) Plaintiff argues that the fact that plaintiff worked for years after his surgery bears little relation to his limitations after he re-injured his back in 2009. But plaintiff even acknowledges that the ALJ found that plaintiff re-injured his back in

an altercation at work. (Doc. 11 at 7; R. at 21.) Further, the ALJ noted that plaintiff tried to return to work after his injury in 2009, but was terminated.[2] (R. at 21.) Again, reading the ALJ's opinion as a whole reveals that the ALJ did acknowledge that plaintiff re-injured his back in 2009 and that he did not discredit plaintiff's testimony because plaintiff worked after his surgery in 2001. This argument fails.

**Third**, plaintiff contends that the ALJ improperly assumed the role of an unqualified medical expert when he characterized his back pain as a "mild back condition." (*Id*. at 23.) But the ALJ was not making a medical determination at this point. The ALJ's statement was made in the discussion of whether plaintiff's subjective complaints were supported by the objective medical record, and the ALJ noted that his subjective complaints alone could not warrant additional limitations beyond those already discussed. (*Id*. at 23.) The court reads the ALJ's comment in context, and does not find that the ALJ was offering a medical opinion regarding plaintiff's condition. He was instead speaking generally about the objective medical evidence regarding plaintiff's condition. Plaintiff's argument on this point fails.

**Fourth**, plaintiff argues that the ALJ erred because although he acknowledged plaintiff's testimony that he could not afford medical treatment, he did not consider "(1) whether the treatment would restore plaintiff's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and if so, (4) whether the refusal was without justification." (Doc. 11 at 9 (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993); *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)).)

The court agrees that the ALJ must address these factors in certain circumstances. *See King v. Colvin*, No. 12-1116-JWL, 2013 WL 1624826, at *3 (D. Kan. Apr. 15, 2013) (quoting same factors

---

[2]     This fact further supports the ALJ's finding that plaintiff was not disabled. *See Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996) (finding that evidence that the plaintiff left his job due to economic reasons—and not because of physical or emotional problems—supported the ALJ's decision that the plaintiff was not disabled).

and calling them the "*Frey*" test). If the ALJ had been analyzing whether plaintiff had followed a prescribed or recommended treatment plan, then the *Frey* test would be required. *See id.* But the *Frey* test is not required in situations, like here, where the ALJ was determining what steps plaintiff had taken to relieve his symptoms in analyzing plaintiff's credibility. *See id.* (noting that "the Tenth Circuit has held that the *Frey* test is not required in situations where treatment has not been prescribed or recommended, but where the ALJ is simply considering 'what attempts plaintiff made to relieve [her symptoms] . . . in an effort to evaluate the veracity of plaintiff's contention that [her symptoms were] so severe as to be disabling'") (citing *Qualls*, 206 F.3d at 1372 (other citations omitted)).

Here, after carefully reviewing the record, the court finds no error in the ALJ's analysis. The ALJ stated that he "understands that the claimant states he could not afford medical treatment and so he does not have records to document his level of suffering." (R. at 23.) But the ALJ also acknowledged that there was a May 2010 function report around the same time that Dr. Rose performed his examinations of plaintiff, and there was no documentation of worsening of symptoms. (*Id.*) And the ALJ pointed out that Dr. Rose cleared plaintiff to return to work around the same time that plaintiff and his roommate were reporting that plaintiff needed help to get dressed in the morning. (*Id.*) Finally, the ALJ notes that "[t]here are no emergency room visits or any other record" to support plaintiff's alleged level of pain. (*Id.*)

The court again had to carefully consider the portion of the ALJ's opinion where he stated that "Dr. Rose's plan for epidural injections to alleviate the claimant's pain, which is real, were [sic] never contradicted in the medical record as being ineffective." (*Id.*) At first glance, it might appear that this is the type of situation in which the *Frey* test is required. However, it appears that the ALJ was referring to plaintiff's failure to seek additional treatment, and not his refusal to follow through with

-10-

prescribed treatment.[3]  The next sentence stating that "[r]egardless, the claimaint sought no other plan to alleviate his pain" further confirms this interpretation.  (*Id.*)  As a result, the court finds that the ALJ was not required to consider the *Frey* factors and his analysis was appropriate.  This argument fails.

**III.     Conclusion**

The ALJ's credibility findings are supported by substantial evidence in the record, and the court will not disturb them.  Based on the above analysis, the court affirms the decision of the ALJ.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is affirmed.  Judgment shall be entered pursuant to fourth sentence of 42 U.S.C. § 405(g).

Dated this 20th day of December, 2013, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**

---

[3]     As discussed above, the ALJ acknowledged that plaintiff did follow through with the epidural injections.  (R. at 22.)